CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**FEB 2 5 2011**

JULIA C. DUDLEY, CLERK
BY: ~~~~~~~~~~~~~~~~
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ADELSON MICHEL, | ) | |
| | ) | Case No. 5:06-cr-41-1 |
| Petitioner, | ) | (Civil Action No. 5:10-cv-80281) |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

The petitioner, a federal inmate proceeding pro se, brings this habeas petition pursuant to 28 U.S.C. § 2255. The government filed a motion to dismiss the petition, and the petitioner responded, making the matter ripe for consideration. Upon review of the record, the court finds that the motion to dismiss must be granted in part and taken under in advisement in part. The petitioner's claim that counsel failed to inform him of his right to testify at trial requires further factual development for its resolution; therefore, the matter will be referred to a magistrate judge for an evidentiary hearing on that claim. Each of the petitioner's other claims, however, must be dismissed for the reasons stated below.

I. **Background**

On March 29, 2007, after a four-day trial, the petitioner, Adelson Michel, was convicted by a jury of his peers on seven counts of a twenty-nine count indictment, which alleged various offenses in connection with his involvement in a cocaine base ("crack") distribution conspiracy. See United States v. Kellam, 568 F.3d 125, 131 (4th Cir. 2009). After denying several of Michel's post-trial motions, the court sentenced him on September 7, 2007 to a total of 324 months' incarceration, finding that, under the United States Sentencing Guidelines (the "Guidelines"), he possessed a total offense level of 41 and a criminal history category of I. On

June 3, 2008, the court granted Michel's motion to reduce his sentence pursuant to the November 1, 2007 Amendments to the Guidelines ("Amendment 706"), which amended the drug quantity table set forth in U.S.S.G. § 2D1.1(c) such that the base offense levels for crack cocaine offenses were generally lowered by two levels. Michel's term of imprisonment was accordingly reduced to 262 months.

After unsuccessfully appealing his conviction and sentence to the United States Court of Appeals for the Fourth Circuit and seeking a writ of <u>certiorari</u> in the Supreme Court of the United States, Michel timely filed the present motion on August 23, 2010. Michel claims that he is entitled to relief on the following grounds: (1) his factual innocence with respect to the drug distribution offenses; (2) a fatal variance between the indictment and the crime proved at trial; (3) his trial counsel's failure to seek a dismissal of the distribution offenses because of the allegedly false testimony supporting them; (4) counsel's failure to inform him of his right to testify on his own behalf; (5) counsel's failure to seek a lesser sentence in light of the 100:1 crack-powder sentencing disparity; and (6) counsel's failure to argue that the drug quantity and leadership role attributed to Michel at sentencing was based upon unreliable evidence.

The case is presently before the court on the government's motion to dismiss Michel's petition.

## II.    **Standard of Review**

To state a claim for relief under § 2255, a federal inmate must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to

2

collateral attack. 28 U.S.C. § 2255(a). In a § 2255 motion, the inmate bears the burden of proving

grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261

F.2d 546, 547 (4th Cir. 1958).

Once a defendant has waived or exhausted his appeals, the court is "entitled to presume

he stands fairly and finally convicted." United States v. Frady, 456 U.S. 152, 164 (1982). Thus,

unless the petitioner alleges a jurisdictional or constitutional error, any asserted error—of fact or

law—will not provide a basis for collateral attack unless it constitutes "a fundamental defect

which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442

U.S. 178, 185 (1979).

Where, as here, the petition is filed by a pro se litigant, the court must hold its pleadings

"to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404

U.S. 519, 520 (1972). The requirement of liberal construction does not mean, however, that the

court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual

basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990).

Similarly, "judges are not . . . required to construct a [pro se] party's legal arguments for him."

Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993). Likewise, the court is not required to

"attempt[] to divine the point" the litigant seeks to make about the specific facet of the criminal

proceedings that he challenges. Id. Where the petitioner's motion, when viewed against the

record, does not state a claim for relief, the court should summarily dismiss the motion. Raines v.

United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   Discussion

### A.   "Actual Innocence" Claims

Michel first argues that his convictions and sentence must be vacated because he is actually innocent of the crimes with which he was charged. The crux of his argument appears to be that the testimony given against him by several witnesses at trial was false, that the government knew this testimony was false, and that his convictions must therefore be overturned.

Michel is correct that a conviction violates due process when it is obtained through the use of evidence that the prosecution knows to be false, whether the prosecution has solicited the false evidence or allowed it to go uncorrected after it appeared. Napue v. People of State of Ill., 360 U.S. 264, 269 (1959). But to succeed on such a claim, Michel must first meet the "heavy burden" of showing that the challenged witnesses testified falsely. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). "A defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." Id. (citation omitted).

Unfortunately for Michel, he relies almost entirely upon "mere inconsistencies" between the testimony of Roland Jackson, Deputy McWilliams, Deputy Orndorff, and certain police reports to support his claim that the evidence given against him was false. Id. But none of the minor inconsistencies between these sources demonstrates that the testimony given against him at trial was actually false. See Griley, 814 F.2d at 971. Michel also claims that the dismissal of Count Eight on the government's motion—after it was determined that Michel was not the individual implicated in the sale that was charged in Count Eight—means that the rest of the

4

indictment was based on erroneous information, as well. It is clear, however, that the mere fact that one count of the indictment was not proven does not necessitate the conclusion that each of the other counts must also be infirm. See United States v. Manbeck, 744 F.2d 360, 373 (4th Cir. 1984). See also Hoke v. Netherland, 92 F.3d 1350, 1360-62 (4th Cir. 1996) (explaining that even the prosecutor's belief that the facts were different than testified to by the witness did not support habeas relief under Napue).

Not only has Michel failed to demonstrate that the challenged testimony was false—as opposed to simply antithetical to his own version of events—but he is also unable to point to any fact supporting his claim that the government knew of the alleged falsity. Stockton v. Virginia, 852 F.2d 740, 749 (4th Cir. 1988) ("A habeas corpus petitioner must show that the prosecutor or other government officers knew the testimony in question was false in order to prevail."). Of course, even if "the Government may have [ ] doubts about the accuracy of certain aspects of [evidence], this is quite different from having knowledge of falsity." Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988).

In the absence of any showing that the government knew the testimony given against Michel was false, his claim essentially boils down to an argument that the jury simply believed the wrong version of the facts presented at trial. But habeas relief cannot be granted on the basis of any asserted error of fact unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Nor is a habeas court in any position to second-guess the fact-finding of a jury, particularly when the jury's findings turn upon its determination of witness credibility. Anderson v. Sternes, 243 F.3d 1049, 1058 (7th Cir. 2001); Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000); Taylor v.

5

Curry, 708 F.2d 886, 892 (2d Cir. 1983). Accordingly, the court cannot conclude that the facts alleged by Michel—which amount to a simple assertion that the jury's witness-credibility determination was incorrect—warrant habeas relief.

Inasmuch as Michel's claim can be construed as an argument that the evidence at trial was insufficient to convict him of the charged offenses,[1] the Fourth Circuit has already ruled that it is without merit. Kellam, 568 F.3d at 146. He may not seek review of that determination here, as "the mere availability of habeas review cannot breathe new life into an issue that was raised and resolved by [the federal appellate court] on direct review." Nunes v. Ashcroft, 375 F.3d 805, 810 (9th Cir. 2004). See also Frady, 456 U.S. at 165 ("[A] collateral challenge may not do service for an appeal.").

Finally, Michel argues that his conviction on Count Two, which charged that he sold an amount of crack cocaine in Virginia on December 10, 2004, must fail, due to the fact that he was actually handling immigration matters in Florida on that date. Michel has attached several photocopies of his passport to his petition and suggests that the court subpoena records from immigration officials in Florida to determine his location on that date. Yet Michel failed to raise this issue either at trial or on appeal. Of course, if he "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial," the court may overlook this failure and proceed to the merits of his claim. Schlup v. Delo, 513 U.S. 298, 316 (1995). Nevertheless, to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at

---

[1] He argues, for example, that Roland Jackson never testified that he bought crack from Michel, and that the prosecution failed to play video and audio recording of the controlled buys involving Michel to the jury.

6

327. As the Supreme Court has noted, "actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; Souter v. Jones, 395 F.3d 577, 590 (6th Cir. 2005).

In light of these principles, the court concludes that the submitted photocopies and conjoined request that the court further investigate his claims have failed to discharge Michel's burden of demonstrating in this habeas proceeding that he is entitled to relief. See Miller, 261 F.2d at 547. Even assuming that all of the relevant passport materials are included in his submission to the court, they demonstrate nothing about his whereabouts on December 10, 2004. See Pet. Ex. D. The court cannot shoulder Michel's burden for him. Bousley, 523 U.S. at 624. He is therefore not entitled to habeas relief on this ground.

## B.    Fatal Variance

Michel next argues that the proof at his trial varied from the charges of the indictment inasmuch as he was charged with crack cocaine distribution offenses but the evidence at trial demonstrated only the distribution of powder cocaine. This claim is without merit.

First, no such variance occurred. The government introduced plentiful testimony and forensic evidence at trial proving that the substance involved in the conspiracy was cocaine base, not simply powder cocaine. See, e.g., Tr. Mar. 26 at 129, 208, 231; Tr. Mar. 27 at 120, 122-23, 169, 195-205; Tr. Mar. 28 (Aft. Sess.) at 35-36, 45, 61-69.

Second, even assuming that a variance occurred, it would be fatal only "if it 'either

7

surprises the defendant at trial and hinders the preparation of his defense, or . . . exposes him to the danger of a second prosecution for the same offense.'" Kellam, 568 F.3d at 133 (quoting United States v. Redd, 161 F.3d 793, 795-96 (4th Cir. 1998)). A variance upsets a conviction, however, only if it affects the "substantial rights" of the accused and resulted in actual prejudice. Id. Several courts have held that, where the defendant was on notice that evidence of his involvement in a drug distribution offense would be presented at trial, his substantial rights were not violated even where evidence of cocaine supported a cocaine base indictment. See United States v. Lewis, 113 F.3d 487, 492-93 (3d Cir. 1997), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Lightner, Nos. 94-5540 and 94-5541, 1996 WL 295284 at *3 (4th Cir. June 5, 1996) (per curiam); United States v. Rancher, 941 F. Supp. 590, 592 (N.D. W. Va. 1996). Accordingly, the court cannot conclude that Michel is entitled to relief on this ground.

## C.     Ineffective Assistance Claims

Michel also argues that, at trial and on appeal, counsel failed to raise "more meritorious issues on the petitioner's behalf." (Pet. at 20.) To the extent that Michel argues that his appellate counsel was unconstitutionally ineffective, the same standard applies to both trial counsel and appellate counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985).

To prove that his counsel's representation was so defective as to require that his conviction be vacated, a habeas petitioner must satisfy both prongs of the two-part standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To do so, the petitioner "must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted). Second, the petitioner must show that counsel's defective performance resulted in prejudice; that is, he must demonstrate a "reasonable probability" that, but for counsel's unreasonable errors, the outcome would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Id. If it is clear that the petitioner has not satisfied one prong of the Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

### 1.      Failure to Seek Dismissal of Distribution Offenses

Michel initially argues that his counsel was unconstitutionally ineffective in failing to seek a dismissal of the distribution offenses based on the allegedly false testimony propounded against him by adverse witnesses. Not only is it clearly established that counsel has no constitutional duty to raise every non-frivolous issue or argument requested by a criminal defendant, Jones v. Barnes, 463 U.S. 745, 754 (1983), but it is evident for the reasons stated in Part III.A. above that Michel is unable to demonstrate that the testimony was actually false. He is therefore unable to make the requisite showing that he suffered prejudice as a result of his counsel's inaction. Strickland, 466 U.S. at 694. This claim must therefore be dismissed.

### 2.      Failure to Inform of the Right to Testify

Michel further argues that his counsel was unconstitutionally ineffective in failing to advise him of his right to testify at trial. Generally, a criminal defendant has the right to testify in his own defense. Rock v. Arkansas, 483 U.S. 44, 55-56 (1987); Daniels v. Lee, 316 F.3d 477, 490 (4th Cir. 2003). It is, moreover, primarily the duty of trial counsel to inform him of this right. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998).

Michel has submitted an affidavit in support of his petition, in which he claims that his

trial counsel never informed him about his right to testify and never received his consent to

forego taking the stand in his own defense. See Pet. Ex. A. Because the government has

submitted no evidence to refute his allegations, the court must assume for present purposes that

Michel's version of events is correct. See Gallego v. United States, 174 F.3d 1196, 1198-99 (11th

Cir. 1999).

To be sure, Michel must still demonstrate that he suffered actual prejudice as a result of

his counsel's alleged omission. Palmer v. Hendricks, 592 F.3d 386, 396-99 (3d Cir. 2010);

Daniels, 316 F.3d at 491; Sexton, 163 F.3d at 882. Nevertheless, because "the most important

witness for the defense in many criminal cases is the defendant himself," Rock, 483 U.S. at 52,

courts have cautioned that "[a] defendant's testimony as to non-involvement should not be

disregarded lightly, especially given his constitutional right to explain his version of the facts."

Owens v. United States, 483 F.3d 48, 59 (1st Cir. 2007). "This is particularly true when the only

witness the defendant proffers is himself." Palmer, 592 F.3d at 396. See also Martinez v. Ylst,

951 F.2d 1153, 1157 (9th Cir. 1991) ("As a general matter, it is only the most extraordinary of

trials in which a denial of the defendant's right to testify can be said to be harmless beyond a

reasonable doubt.").

Thus, if a defendant claims that he would have offered testimony that would be

"genuinely exculpatory," courts have held that counsel's failure to inform him of his right to

testify may be prejudicial. Owens, 483 F.3d at 59. In Owens, for example, the petitioner was

granted an evidentiary hearing on the basis of his statement that he "would have testified that he

did not have any role in the murders charged." Id. By contrast, where a petitioner claims merely

that he would have explained his own version of events without setting forth any facts to support his contention, his claim is not "sufficiently detailed to be 'genuinely exculpatory.'" Palmer, 592 F.3d at 396 (quoting Owens, 483 F.3d at 59) (no prejudice where petitioner conclusorily stated that he would have explained his version of events and asserted that he acted in self-defense without describing any of the facts to which he would have testified). See also Brown v. Artuz, 124 F.3d 73, 80 (2d Cir. 1997) (no prejudice where the defendant would have testified to facts that would have only partially supported a theory of self-defense); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (no prejudice where the petitioner identified a witness that his attorney had not called but gave no indication as to what the witness would have testified to).

In the instant case, Michel asserts that he would have testified (a) that he did not live at the residences alleged by the confidential informant; (b) that he did not sell cocaine base or any other drug to the confidential informant, nor did he participate in any drug distribution ring; (c) that he did not participate in the illegal narcotics ring given the fact that he spent much of his time traveling between Virginia, Florida, and Haiti in furtherance of his import business; (d) that he could have testified to specific dates and time periods that he was not in Virginia during the time of the drug distribution conspiracy; (e) that he was mis-identified as "Cowboy" in the indictment and that another individual named Michel was actually the "Cowboy" involved in the conspiracy; and (f) that he was in Florida resolving immigration issues between December 8 and December 12, 2004 and thus could not have been the individual who sold drugs in Virginia on December 10, 2004. (Pet. Ex. A. at ¶¶ 5-11.) Although Michel's counsel called seven witnesses at trial, six of them were prosecution witnesses who were recalled for impeachment purposes. Kellam, 568 F.3d at 130-31. Thus, if Michel had testified, he would have been one of the very

few witnesses to explain his own version of events. See Owens, 483 F.3d at 59; Palmer, 592 F.3d at 396. If the jury credited Michel's testimony, of course, it would have been unable to convict him of the offenses charged in the indictment.

Given the "overwhelming" evidence in support of Michel's conspiracy conviction, Kellam, 568 F.3d 125, it is not obvious to the court at this time whether Michel is able to demonstrate a "reasonable probability" that, but for counsel's alleged failure to apprise him of his right to testify, the outcome of his trial would have been different. Strickland, 466 U.S. at 694. In accordance with Palmer and Owens, however, the court concludes that Michel's petition has alleged more than "bald assertions and conclusory allegations" on this claim and that it therefore warrants an evidentiary hearing. Palmer, 592 F.3d at 395. See also United States v. Rashaad, 249 F. App'x 972, 973 (4th Cir. 2007) (per curiam) (remanding for an evidentiary hearing on the defendant's claim that his attorneys failed to apprise him of his right to testify); United States v. Squillacote, 183 F. App'x 393, 394 (4th Cir. 2006) (per curiam) (same); United States v. Stokes, 112 F. App'x 905, 906 (4th Cir. 2004) (same). Accordingly, because this issue cannot be fully resolved on the existing record, the court will refer this claim to a magistrate judge for an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970).

### 3. Failure to Seek a Lesser Sentence in Light of the Crack/Powder Sentencing Disparity

Michel also contends that his counsel at sentencing was unconstitutionally ineffective inasmuch as he did not request the court to vary downward from the guidelines based on the 100:1 crack/powder sentencing disparity. See Kimbrough v. United States, 552 U.S. 85, 110-11 (2007).

This argument fails for two reasons. First, Michel has failed to overcome the presumption that his counsel's failure was a reasonable strategic decision. Strickland, 466 U.S. at 689. As the Supreme Court has observed, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 133-34 (1982). Thus, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it" does not amount to ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 486 (1986). See also United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Indeed, the Kimbrough Court held only that it was permissible for a sentencing court to vary from the Guidelines based on the crack/powder disparity, not that it was obligated to do so. Kimbrough, 552 U.S. at 110-11; Spears v. United States, 555 U.S. 261, 129 S. Ct. 840, 843-44 (2009) (per curiam). It would be eminently reasonable, therefore, for Michel's counsel to have focused his efforts at sentencing on arguments that he believed would be more likely to influence the court's sentencing decisions. Cf. Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989) (appellate counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). See also United States v. Davis, 346 F. App'x 941, 943, 944 (4th Cir. 2009) (per curiam) (finding "meritless" the petitioner's contention that counsel was ineffective in failing to challenge the 100:1 crack/powder sentencing disparity). Especially given "the deference due to the strategic decisions made by trial counsel," the court cannot conclude that the conduct of Michel's counsel at sentencing was unreasonable. Walton v. Angelone, 321 F.3d 442, 466 (4th Cir. 2003).

Second, Michel has failed to allege the requisite prejudice. Although Kimbrough permits the sentencing court to deviate from the Guidelines when it articulates its disagreement with the crack/powder sentencing disparity, Spears, 129 S. Ct. at 844, a sentencing court retains the ability to sentence the defendant to any statutorily-permissible term. United States v. Booker, 543 U.S. 220, 233 (2005). Michel has pointed to nothing to support a conclusion that it is "reasonably probab[le]" that the court would have departed downward from the applicable Guidelines range had his counsel suggested that it do so.[2] Strickland, 466 U.S. at 694. This claim must therefore be dismissed.

### 4.      Failure to Contest Drug Quantity and Leadership Role at Sentencing

Finally, Michel claims that his counsel failed to adequately contest the sentence enhancements based on the drug quantity and leadership role that were attributed to him at sentencing. But the record demonstrates that his counsel argued these issues before the sentencing court and appealed them to the Fourth Circuit. See Sent. Tr. at 6-7. The Fourth Circuit upheld the sentencing court's determination as to the appropriate drug quantity and the application of the leadership role enhancement. Kellam, 568 F.3d at 147-48. Michel has thus failed to demonstrate either that his attorney erred or that he suffered prejudice as a result. Strickland, 466 U.S. at 687. Habeas relief is therefore not warranted on this ground.

## IV.     Conclusion

For these reasons, the government's motion to dismiss will be granted in part and taken under advisement in part, and the case will be referred to the Honorable B. Waugh Crigler,

---

[2]In passing, the court notes that it has consistently and uniformly declined to vary from the Guidelines in criminal sentencing based solely on the "crack/powder disparity."

United States Magistrate Judge for the Western District of Virginia, for an evidentiary hearing on the petitioner's claim that counsel was ineffective in failing to apprise the petitioner of his right to testify at trial. The magistrate judge shall submit a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition of the petitioner's claim, pursuant to 28 U.S.C. § 636(b)(1)(B).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the petitioner and to counsel of record for the government.


ENTER: This _25th_ day of February, 2011.


_Glen Conrad_
Chief United States District Judge